Fred E. Werner and Juanita C. Werner v. Commissioner.
Werner v. Commissioner
Docket No. 93609.
United States Tax Court
T.C. Memo 1962-269; 1962 Tax Ct. Memo LEXIS 37; 21 T.C.M. (CCH) 1434; T.C.M. (RIA) 62269; November 19, 1962
Guy A. Magruder, Jr., Esq., for the petitioners. Hugh C. McMahon, Esq., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: The respondent determined a deficiency in the petitioners' income tax for the year ended December 31, 1959, in the amount of $523.22. The only issue for decision is whether the amount realized upon the cancellation of unsecured debts owed to the corporate employer at the time petitioner's employment was terminated constituted ordinary income or a gift. Findings of Fact Some of the facts are stipulated and are so found. Fred E. Werner (hereinafter referred to as petitioner) and Juanita C. Werner were husband and wife (hereinafter *38 referred to as petitioners), residing in Kansas City, Missouri, during the taxable year 1959. They filed a joint income tax return for that year with the district director of internal revenue, Kansas City, Missouri. On or about March 10, 1956, the petitioner obtained employment as office manager with the List and Clark Construction Company (hereinafter referred to as List and Clark). List and Clark is a closely held corporation whose principal offices are located at Kansas City, Missouri. During 1959 the corporate officers were C. E. Clark, Jr., president; J. W. Frisbie, vice president; J. M. Clark, vice president; J. E. Irwin, vice president; and D. W. Davis, secretary. The officers were the principal stockholders and also comprised the board of directors. Petitioner's salary during the taxable year 1959 was $650 per month. In addition to his salary, List and Clark allowed the petitioner to withdraw cash and goods from the corporation from time to time during his employment. These advances were treated as unsecured loans and appropriate entries were made on the corporate books to "Accounts Receivable - Fred E. Werner." The petitioner authorized monthly payroll deductions as payment *39 on the debts. On June 15, 1959, List and Clark formally terminated petitioner's employment. C. E. Clark, Jr., president of the corporation, informed the petitioner that he would receive his unpaid salary to the date of termination and an additional two and one-half months' salary as severance pay. The petitioner was paid these amounts by a check dated June 16, 1959. This amount was reflected on the petitioner's Withholding Tax Statement, Form W-2, and the appropriate amounts were withheld by List and Clark for federal and state taxes. On the date of termination the petitioner was indebted to List and Clark for sums received by him or paid for his benefit in the amount of $2,844.73. Petitioner testified that in his conversation with C. E. Clark, Jr., concerning his termination, Clark told him the corporation would forget the indebtedness. This sum was not included in the petitioner's Withholding Tax Statement and the corporation withheld no Federal income tax on the amount. By an entry dated December 31, 1959, the petitioner's account receivable on the corporation's books was written off as uncollectible. On April 7, 1960, the petitioner received a letter from List and Clark *40 signed on behalf of the corporation by D. W. Davis, secretary, indicating that the indebtedness had been written off as "termination pay." The petitioner subsequently requested that C. E. Clark, Jr., substantiate his position on the matter of the indebtedness. In response to that request the petitioner received a letter dated January 30, 1961, from C. E. Clark, Jr., which stated that the amount was written off because it was considered uncollectible. At no time, including the taxable year 1959, has the petitioner been insolvent. The petitioners did not include the amount of $2,844.73 or any portion thereof as income in their Federal income tax return for 1959 or in any subsequent year. List and Clark did not intend to make a gift to petitioner by the cancellation of the indebtedness, but did forgive the debt. Opinion Respondent contends that the amount realized from the discharge of the indebtedness constitutes ordinary income as defined in section 61(a)(12) of the Internal Revenue Code of 1954. [1] The petitioners, on the other hand, contend that such amount constitutes a gift and should be excluded from gross income. [2]
*41 Cancellation of indebtedness normally gives rise to ordinary income unless it can be shown that, in forgiving the debt, it was intended to confer a gift upon the debtor. The burden of proving a gift is on the debtor. Willkie v. Commissioner, 127 F. 2d 953 (C.A. 6, 1942), certiorari denied 317 U.S. 659. The evidence in this case does not support a finding that List and Clark intended to make a gift of the amount in question to the petitioners. The mere fact that cancellation of a debt is voluntary does not establish it as a gift. Donative intent is the criterion. In determining intent, consideration must be given here to the corporation's characterization of the act, the treatment of the item on its books and its tax returns, and the surrounding circumstances. During the interrogation of C. E. Clark, Jr., president of List and Clark, he answered in the following manner with respect to the cancellation of the debt: We didn't regard it in that way. We regarded it as excessive termination pay or a debt on the account that we couldn't hope to collect, but it wasn't a gift in my definition of a gift. There is further testimony to the effect that the *42 debt was actually written off the books as uncollectible and that List and Clark took the amount as a bad debt deduction in its tax return. In addition, two letters were sent to the petitioner concerning the debt cancellation, the first one indicating that the amount was treated as termination pay and the second that the amount was written off as uncollectible. We deem it unnecessary to determine whether the corporation considered the amount as an uncollectible debt or as termination pay because, in either case, it would preclude a finding that a gift was intended. The circumstances surrounding the termination of employment further indicate a lack of donative intent. C. E. Clark, Jr., testified that he was extremely upset at the time and that the petitioner's employment was terminated involuntarily because of personnel problems. There was no atmosphere of goodwill due to long and faithful service of the petitioner. Nor can we impute to List and Clark, even from the goodness of its corporate heart, an intent to make a gift. The forgiveness here did not proceed from a "disinterested and detached generosity," Commissioner v. LoBue, 351 U.S. 243 (1956), "out of affection, *43 respect, admiration, charity or like impulses." Robertson v. United States, 343 U.S. 711, 714. There is a strong presumption that corporations do not make gifts. This is especially true where the officers of a closely held corporation are not authorized by the stockholders to make a gift. Although here the officers were the principal stockholders and there is testimony that the matter was discussed among the officers, there is no evidence showing that the corporation decided to confer a gift upon the petitioner. Where the relationship of employer and employee has existed, amounts received by the employee are presumed to have been in return for services and not gifts. Cf. Willkie v. Commissioner, supra; L. Gordon Walker, 25 T.C. 832 (1956); Ruth Jackson, 25 T.C. 1106 (1956). Since the determining factor here is the complete lack of donative intent on the part of List and Clark, we hold that the amount of the cancelled debt is includable in the gross income of the petitioners. Decision will be entered for the respondent. Footnotes
1. SEC. 61. GROSS INCOME DEFINED. (a) GENERAL DEFINITION. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * *
(12) Income from discharge of indebtedness; * * *. ↩
2. SEC. 102. GIFTS AND INHERITANCES. (a) GENERAL RULE. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩