Richard L. and Mary Harrington v. Commissioner.
Harrington v. Commissioner
Docket No. 63611.
United States Tax Court
T.C. Memo 1958-194; 1958 Tax Ct. Memo LEXIS 29; 17 T.C.M. (CCH) 960; T.C.M. (RIA) 58194; November 24, 1958
*29 Held, the sum of $10,000 received by petitioners from the employers of petitioner Richard L. Harrington was not compensation but was a gift excludable from gross income under section 22(b)(3), I.R.C. of 1939. John H. Beasley, Esq., 2225 Wabash Avenue, Terre Haute, Ind., for the petitioners. George H. Becker, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioners' income tax and additions to tax as follows: Additions to Tax
Sec. 294
Sec. 294
Year
Deficiency
(d)(1)(A)
(d)(2)
1952
$5,047.82
$490.72
$327.15
The only issue is whether the sum of $10,000 received by petitioners from the employers of petitioner *30 Richard L. Harrington was a gift or compensation. Two small items of interest of $8.48 and $1.67 have been conceded. This concession will be given effect under Rule 50. Respondent acknowledges on brief that petitioners' liability for additions to tax is dependent upon the main issue. Accordingly, it will be disposed of therewith. Findings of Fact Petitioners, Richard L. and Mary Harrington, are husband and wife, residing in Terre Haute, Indiana. (For convenience Richard L. Harrington will sometimes hereinafter be referred to as Richard.) Their joint Federal income tax return for the taxable year 1952 was filed with the district director of internal revenue, Indianapolis, Indiana. Beginning in January 1948 petitioner Richard L. Harrington was employed as general manager of the National Literary Association (hereinafter referred to as N.L.A.), a partnership having its office in Terre Haute, Indiana. The N.L.A. was engaged in door-to-door sales of magazine subscriptions, operating through the United States and in Canada and Honolulu. There were only two members of the partnership: Leo E. Light and Roy C. Hodge. Light was in charge of the management and supervision of N.L.A. *31 Hodge was fairly inactive and was in Terre Haute very little. When he was working, he spent most of his time traveling, visiting the various sales organizations. Light and Hodge kept in contact by means of letters, telephone calls, and telegrams. Often they would meet at places other than Terre Haute. By the terms of a written contract of employment entered into on December 20, 1947, Richard was to be paid $200 per week for the period beginning January 19, 1948, and ending December 31, 1950; $275 per week for the calendar year 1951; and $525 per week for the calendar years 1952 to 1957, inclusive. He received a raise of $125 per week, effective July 1, 1953, and a $5,000 bonus in early 1954. Petitioners reported and paid tax on this additional income. Business and personal relations between Richard and the two partners were friendly, particularly so with Light. The Harringtons and Lights lived across the street from one another in Terre Haute and spent considerable time in each other's homes. When Hodge and his wife were in Terre Haute the Harringtons were usually with them, and on at least one occasion they visited the Hodges in Florida. In the summer of 1948 petitioners purchased *32 a home in Terre Haute. The property consisted of three acres of ground and a two-story house with basement. After the birth of a third child in October 1951 these quarters became cramped and petitioners decided to obtain bids on enlarging the house. They estimated that this addition would cost about $15,000, which was approximately the amount they had available. The estimate they received was a little more than $25,000. They therefore decided to abandon the idea temporarily. Petitioners had discussed their plans for remodeling with the Lights. After they received the estimate, they informed the Lights they were not going to be able to proceed until they accumulated more money. Light advised the petitioners that they needed the extra space and told them to start with the remodeling and that he would see that they got the additional $10,000 in some manner. Consequently, petitioners proceeded with their plans. Nothing was said at that time as to the basis upon which the money would be made available. Sometime during the year 1952 Light and his partner, Hodge, decided to make a gift to petitioners of the additional $10,000 and so advised Richard. Later, Light explained to his accountant, *33 L. P. Baber, that he had his partner's permission to give petitioners $10,000 toward the remodeling of their home and asked his advice as to procedure. Baber advised Light to lend $10,000 to the Harringtons and then make a gift to them of $2,500 a year for four years thereafter. There was no note or other written evidence that the amount was a loan, nor was any gift tax return filed by Light or Hodge for the transaction. The $10,000 was presented to petitioner Mary Harrington, in cash, by Light at the N.L.A. office, $6,000 being presented in September 1952 and $4,000 in November 1952. Both amounts were promptly paid over by Mary Harrington, in cash, to the contractor building the addition on the Harringtons' home. The $6,000 presented to Mary Harrington by Light in September was withdrawn from the partnership bank account and charged on the company's books against the drawing accounts of the partners, $3,000 each. Of the $4,000 presented to her by Light in November, $3,000 was withdrawn from the partnership bank account and charged against the partners' drawing accounts, $1,500 each. The remaining $1,000 was furnished by Light, personally, who was later reimbursed $500 by his partner, *34 Hodge. N.L.A. did not take a tax deduction for the $10,000. From the beginning of Richard's employment with N.L.A., petitioners entertained magazine sales crews that came to Terre Haute. Small groups were entertained in petitioners' own home, larger groups being taken to the Lights' home which had a big recreation room. Petitioners took crews to the Lights' home many times during periods in which Mrs. Light was confined to sanitariums prior to, during, and after the year 1952. It was Richard's assumption, in the absence of actual knowledge, that the $10,000 was paid to petitioners as a gift because of friendship and because Mary Harrington assisted in entertaining sales crews during the entire period of Richard's employment with N.L.A. The $10,000 was received by petitioners as a gift from Light and Hodge personally and was not compensation. Opinion VAN FOSSAN, Judge: The only question at issue is whether the sum of $10,000 received by petitioners during the taxable year 1952 from the employers of petitioner Richard L. Harrington should be taxable to them as compensation under section 22(a) of the Internal Revenue Code of 1939, [1] or should be excluded from gross income *35 as a gift under section 22(b)(3)[2]
*36 The question is one of fact, and its resolution depends upon the intention of the parties, particularly that of the donors, Light and Hodge. Their intention must be determined from a consideration of all the facts and circumstances surrounding the payment. United States v. Bankston, 254 Fed. (2d) 641 (C.A. 6, 1958); Neville v. Brodrick, 235 Fed. (2d) 263 (C.A. 10, 1956); Alice M. Macfarlane, 19 T.C. 9 (1952); Louise K. Aprill, 13 T.C. 707 (1949). It is ordinarily presumed that if services have been performed for a payor, directly or indirectly, from which he reaps substantial benefits, the amount received is for services, and is not a gift. This presumption is particularly strong where the employer-employee relationship exists. Michael Laurie, 12 T.C. 86 (1949). However, we are of the opinion that petitioners have successfully overcome this presumption. The evidence that the donors intended the $10,000 to be a gift to the Harringtons to enable them to proceed with the planned addition to their home and was not considered as compensation is clear and convincing. Richard enjoyed a friendly relationship with his *37 two employers, Light and Hodge. He was particularly close to Light. The Harrington and Light families lived across the street from one another and visited frequently. Light, himself, testified that it was the intention of himself and his partner, Hodge, that the $10,000 should be a gift. This testimony was corroborated by that of Lawrence P. Baber, a certified public accountant who supervised the accounting procedure and made the tax returns for N.L.A. and the individual partners. Baber stated that Light told him that he wished to give the Harringtons $10,000. Baber advised Hodge to lend the money to the Harringtons and theem make a gift of $2,500 each year for four years. There is no evidence that this procedure was followed. The money was presented to Mary Harrington in installments of $6,000 and $4,000. The $6,000 installment was charged against the drawing accounts of the partners, $3,000 each. Of the $4,000 installment, $3,000 was charged to the partners' drawing accounts, $1,500 each. The remaining $1,000 was furnished by Light personally. He was later reimbursed $500 by Hodge. Both installments were promptly paid over to the contractor who was building the addition to the *38 Harringtons' home. The amount of the transfer was approximately the sum needed by petitioners to carry out their plans to remodel their home; it bore no relation to Richard's salary, which was fixed by contract. A $125 per week raise later secured by Richard in July 1953, and a $5,000 bonus paid to him in early 1954 were both reported on petitioners' income tax returns. N.L.A. did not take a deduction for the $10,000, nor is there any evidence that it was charged to expenses on the partnership books. No one of the above factors, taken by itself, establishes a donative intent but, considered all together, they are conclusive evidence that Light and Hodge intended a gift. Richard informed an internal revenue agent that it was his assumption, in the absence of actual knowledge, that the gift of $10,000 was made because of friendship and because his wife, Mary Harrington, assisted in entertaining sales crews during the entire period of his employment with N.L.A. Respondent relies upon this statement as proof that the $10,000 was compensation in return for entertaining done by Mary Harrington. We do not agree. If a transfer is a gift, it is a gift nonetheless because inspired *39 by a feeling of gratitude for past or anticipated future services. Neville v. Brodrick, supra, citing Bogardus v. Commissioner, 302 U.S. 34. We hold that the payment was a gift and so excludable from gross income. We further hold that respondent erred in determining additions to tax under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
2. (b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(3) Gifts, Bequests, Devises, and Inheritances. - The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property;↩